UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DARRELL EDISON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-16-683 |
| | § | |
| AVALON CORRECTIONAL SERVICES, | § | |
| INC.; dba AUSTIN TRANSITIONAL | § | |
| CENTER, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This is a civil rights case filed under 42 U.S.C. § 1983 by a state parolee alleging that parole officers in the Texas Department of Criminal Justice Parole Division and the staff of the halfway house where he was assigned retaliated against him for filing a lawsuit in 2008 against a former parole officer. Pending are motions for summary judgment and for judgment on the pleadings filed by Defendants Avalon Correctional Services, Inc., Avalon Treatment Services, LLC, ACS Corrections of Texas, LLC, (collectively, "the Avalon companies") and Avalon employees Tammy Bovee ("Bovee") and Joanne Johnson ("Johnson") (collectively and together with the Avalon companies, "Avalon Defendants") [Doc. Nos. 36, 43]; and a motion for summary judgment filed by Texas Department of Criminal Justice-Parole Division ("TDCJ-PD") employees Ryan Delaney ("Delaney"), Brittany Lara ("Lara"), Judy Moss ("Moss"), Jaime Martinez ("Martinez"), and Jane Doe Phillips ("Phillips", and collectively, "TDCJ-PD Defendants") [Doc. No. 54]. The Court has carefully considered the pleadings, motions, responses, evidence in the record, and applicable law, and concludes that the motions should be granted and this case dismissed for the reasons that follow.

## I.   BACKGROUND

Plaintiff Darrell Edison ("Edison") alleges that on or around September 11, 2008, he filed a civil action in state court against non-defendant David Kohn ("Kohn"), his parole officer at the time, claiming that Kohn had issued a baseless warrant for his arrest.[1]  Edison settled that case with Kohn in 2009.[2]

On October 18, 2010, Edison was convicted in the 147th Judicial District Court of Travis County, cause number D-1-DC-09-206713, of possession with intent to deliver a controlled substance, namely, methamphetamine (4 grams or more but less than 400 grams), a first degree felony, and was sentenced to ten years' imprisonment.[3]  That same day in the same court, Edison was also convicted of continuous violence against the family in cause number D-1-DC-10-907220, a third degree felony, and was sentenced to five years' imprisonment to run concurrently with the drug conviction.[4]

Edison was paroled to Travis County on March 21, 2013.[5]  At the time he was paroled, Edison agreed to all of the conditions of his parole, including the following special conditions: (1) special condition L—Edison is assigned to the maximum level of supervision; (2) special condition 0.20—Edison shall participate in Battering Intervention and Prevention Program ("BIPP") concerning domestic violence; (3) special condition 0.33—Edison shall be evaluated to determine the need for sex offender counseling; (4) special condition S—Edison shall submit to a substance treatment program; (5) special condition V2—Edison shall not intentionally or

---

[1] Doc. No. 20, Edison's Second Amended Complaint ("SAC") ¶ 24.
[2] *Id.*
[3] Doc. No. 30-2 at 6 (*State v. Edison*, No. D-1-DC-09-206713, Judgment of Conviction). Unless otherwise specified, for the purposes of identification all page numbers reference the pagination imprinted on each docket entry by the Court's filing system, CM/ECF.
[4] Doc. No. 30-2 at 8 (*State v. Edison*, No. D-1-DC-10-907220, Judgment of Conviction).
[5] Doc. No. 30-2 at 5, Bates No. Edison 737 (Certificate of Parole).

knowingly communicate directly or indirectly with a victim of his crimes.[6]   In addition, as a condition of his parole, Edison agreed to pay: (1) all outstanding fines, court costs, and fees adjudged against him; (2) a supervision fee for each month that he is required to report to his parole officer; and (3) 25% of his income to the halfway house where he is placed.[7]  Edison was informed that the failure to meet the conditions of his parole could result in the revocation of his parole.[8]  About one week after he was paroled, Edison was placed in the Austin Transitional Center ("ATC"), a halfway house owned and/or operated by the Avalon companies.[9]

Edison alleges that in July 2013, Defendants Moss and Delaney called him to the parole office for a case conference to discuss why he was filing for disability and why he was not looking for employment.[10]  Edison alleges that he told them he could not work because he was disabled and that he had filed a disability claim.[11]  In Delaney's presence, Moss allegedly asked Edison about his 2008 lawsuit against former parole officer David Kohn, who is not a defendant in this case.[12]  When Edison stated that Kohn was not around anymore, Moss, who had known and worked with Kohn, allegedly became angry and informed Edison that she would scrutinize everything Edison wanted to do, including his requests to visit his doctor and lawyer or to go to the library.[13]  Moss also allegedly told Edison that his life would be harder in the halfway house than in prison from that point on.[14]  Three or four weeks later, Moss asked Edison for his doctor's information, which Edison provided.[15]

On September 13, 2013, Moss allegedly called Edison to another case conference and

---

[6] Doc. No. 30-2 at 3-5, Bates Nos. Edison 735-37 (Edison's Certificate of Parole).
[7] Id.
[8] Id. at Bates No. 737.
[9] Doc. No. 60-1 ("Edsion's Declaration") at 1; SAC ¶¶ 1-4.
[10] SAC ¶ 26.
[11] Id.
[12] Edison's Declaration at 1.
[13] Id.
[14] Id.
[15] SAC ¶ 27.

wanted him to drop his disability claim because she had called his doctor, who purportedly had stated that Edison was not disabled.[16] Edison alleges that he subsequently called his doctor, who stated that he had not released any information regarding Edison's health condition.[17] Edison also alleges that Moss and Martinez told him that he would have to show her his legal documents in order to be allowed to go to the law library.[18]

Later that day, Martinez called Edison into a second meeting and allegedly told Edison that he had to take a class that cost $400.00 as a condition of his parole.[19] Edison stated that he was disabled and did not have $400.00, but Martinez allegedly stated that he did not care and would have Edison sent back to prison if he did not pay for the class.[20] Edison alleges that Martinez revealed that there was a free class that he could attend only after Edison's disability lawyer wrote a letter to Martinez.[21]

Edison alleges that all of the "frivolous" violations were handed down from about May 2013 to February 2014.[22] He complains that he was written up for not looking for work, not paying fees and not taking classes.[23] He also discloses that because unspecified defendants would not give him messages from his doctors and lawyer, he obtained a phone, which resulted in another violation.[24] Edison complains that other parolees are allowed to have phones, but he is not.[25] He also claims that unidentified parole officers would taunt him, asking him if he was

---

[16] Edison's Declaration at 1-2.
[17] SAC ¶ 27.
[18] *Id.* ¶ 28.
[19] Edison's Declaration at 2.
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*

going to "file another suit."[26] He claims that he was treated differently from the majority of the population at ATC.[27]

On January 15, 2014, Lara allegedly refused Edison's request to leave in order to see his attorney, even though she allegedly had known about the appointment for weeks.[28] Edison alleges that defendants would cancel his legal and medical appointments for no reason.[29] Edison claims that he has been diagnosed with COPD, asthma, congestive heart failure, type II diabetes, severe sleep apnea, and high blood pressure.[30]

On January 21, 2014, Martinez and Phillips informed Edison that he was being transferred to Dallas, Texas.[31] Edison was not given a reason.[32] He protested the transfer because all of his family, lawyers, and medical providers are in Austin.[33] He was transferred to Dallas for a day or two and then was transferred back to Austin when the Dallas officials learned that he had no source of income and could not pay to stay there.[34] Edison alleges that defendants conspired to cover up his brief transfer to Dallas.[35]

On March 11, 2014, Edison and Percy Anderson ("Anderson"), another resident of ATC, got into an altercation, and the police were called to the facility but did not arrest Edison at that time.[36] Edison alleges that the police determined that it was "nothing more than a silly argument between two grown men."[37] Around March 14, 2014, Defendant Lara allegedly told Anderson

---

[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] SAC ¶ 29.
[30] *Id.*
[31] Edison's Declaration at 2.
[32] *Id.*
[33] *Id.*
[34] *Id.* at 2-3.
[35] *Id.* at 3.
[36] *Id.*
[37] *Id.*

to file formal charges.[38] Anderson submitted an affidavit to the police testifying that Edison had poked him in the nose and struck him in the face with his fist.[39] Lara obtained a warrant for Edison's arrest because "reliable information has reached the Texas Department of Criminal Justice, Parole Division that [Edison] has violated the terms, rules, and/or conditions of administrative release, has lapsed or is about to lapse into criminal ways or company."[40]

Edison's revocation hearing was held on May 2, 2014.[41] The hearing resulted in a "no finding" regarding the alleged violations and the hearing officer recommended "Non-Revocation Action-Continue Supervision Reaffirm or Modify Existing Special Conditions."[42] On May 5, 2014, at the recommendation of Lara and Phillips, the Parole Board panel voted to impose special condition Z, which required Edison not to enter Travis County.[43] The reasons given for the special condition were that the victims of Edison's assaults all live in Travis County, Edison had displayed aggressive behavior while at the ATC, and Edison would benefit from special condition Z because he would not be in an environment conducive to aggressive behavior.[44] Edison was transferred to a Houston halfway house on or around May 17, 2014 after spending 53 days in jail.[45] He alleges that he has no family support in Houston and has been unable to see his son graduate in Travis County or to attend a close uncle's funeral.[46]

Edison brings claims against all of the defendants generally alleging that they have conspired to retaliate against him to "exact revenge" on him for filing the 2008 case against

---

[38] *Id.*
[39] Doc. No. 42-1 (Anderson Formal Complaint Affidavit).
[40] Doc. No. 30-4 ("Warrant Directing Retaking Administratively Released Prisoner").
[41] Doc. No. 30-5 at Edison 436.
[42] *Id.* at Edison 436-38.
[43] *Id.* at Edison 439
[44] *Id.*
[45] Edison's Declaration at 3.
[46] *Id.*

former parole officer David Kohn.[47]  Edison alleges that the defendants aimed to make his life as difficult as possible and tried to have him violate his parole so he would be sent back to prison. Edison also brings state law claims against the Avalon companies for negligent hiring, supervision, and training.  He seeks a declaration that defendants' actions in transferring him to Harris County were not supported by federal or state law.  Edison also seeks $5 million in damages, jointly and severally, from the defendants for the harms done to him, along with punitive damages, costs, and attorney's fees.[48]

Defendants Julie Morales and Stewart Jenkins were dismissed without prejudice for lack of jurisdiction by order of the Court on November 3, 2016.[49]  The Avalon Defendants who have been served[50] move for judgment on the pleadings and for summary judgment, arguing that any claims accruing before March 2014 are barred by the statute of limitations; Edison does not raise a fact issue regarding Bovee's or Johnson's personal involvement; and Edison does not establish that Avalon had an unconstitutional policy that caused his injury or is otherwise liable under a state law negligence theory.  The remaining TDCJ-PD Defendants move for summary judgment, asserting their entitlement to qualified immunity and contending that Edison does not raise a fact issue on any of his claims.  Finally, all defendants argue that, to the extent that Edison seeks relief from the Parole Board's imposition of special condition Z, his claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

## II.    LEGAL STANDARDS

### A.    Prison Litigation Reform Act

Because Edison resides in a halfway house as a condition of his parole from a criminal

---

[47] SAC ¶ 25.
[48] *Id.* ¶¶ 45, 49-53.
[49] *See* Doc. No. 26.
[50] Defendants James Higby, Jane Doe Mota, and Greg Basham have not been served and have not appeared in this case.

conviction, the Prison Litigation Reform Act ("PLRA") applies to his claims. *See Jackson v. Johnson*, 475 F.3d 261, 267 (5th Cir. 2007). The PLRA requires that the district court review a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). On review, the Court must identify cognizable claims or dismiss the complaint or any portion thereof, if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A complaint may be dismissed as frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges violation of a legal interest which clearly does not exist." *Harris v. Hegmann,* 198 F.3d 153, 156 (5th Cir. 1999) (citing *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998)).

A review for failure to state a claim is governed by the same standard used to review a dismissal pursuant to Rules 12(b)(6) or 12(c) of the Federal Rules of Civil Procedure. *See Newsome v. EEOC,* 301 F.3d 227, 231 (5th Cir. 2002); *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (holding that a motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6)). Under that standard, courts must assume that plaintiff's factual allegations are true and dismiss only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations. *See Newsome v. EEOC,* 301 F.3d 227, 231 (5th Cir. 2002).

Even so, a plaintiff must allege sufficient facts to state a claim to relief that is "plausible"

on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007). A claim is facially plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss. *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).

**B.   Summary Judgment**

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

Factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999)). "Mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992)). The Court may grant summary judgment on any ground supported by the record, even if the

ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

## C.    Qualified Immunity

Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). As a result, courts will not deny qualified immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The United States Supreme Court recently reiterated "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 551-52 (2017) (quoting *al-Kidd*, 563 U.S. at 742); *see also City and County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774, n. 3 (2015) (noting several of the Supreme Court's reversals on qualified immunity and collecting cases). Indeed, "the clearly established law must be 'particularized' to the facts of the case." *White*, 137 S. Ct. at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In other words, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640.

Therefore, a plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 735 (citation omitted). When a defendant raises the defense of qualified immunity, the plaintiff bears the burden to negate the

defense once it is properly raised. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Bazan ex rel. Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001)).

III.   **DISCUSSION**

A. **Claims against the Avalon Defendants**

1. **Bovee and Johnson**

As Bovee and Johnson point out, Edison does not plead *any* specific facts against either of them or any other Avalon staff member; instead he brings conclusory allegations against an unspecified group of defendants without alleging a single fact to show what either Bovee or Johnson actually did to violate his civil rights.  On summary judgment, Edison fails to point to any evidence to establish Bovee's or Johnson's personal involvement in any alleged constitutional violation.  Personal involvement is an essential element of a civil rights claim under 42 U.S.C. § 1983. *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992) (a plaintiff must "specify the personal involvement of each defendant" in a section 1983 action). Furthermore, there is no evidence that Bovee or Johnson had any knowledge of the 2008 lawsuit against a former parole officer who was not involved in this case and is not alleged to have any association with the Avalon Defendants.  Because Edison does not allege facts or point to evidence to raise a fact issue on their personal involvement in the alleged retaliation, the claims against Bovee and Johnson must be dismissed.

2. **The Avalon Companies**

Even if some unspecified Avalon employee had violated Edison's constitutional rights, the Avalon companies are not liable under a *respondeat superior* theory of liability under section 1983 for the torts of its employees. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978) (finding that a local government cannot be held liable on the basis of *respondeat*

*superior*); *see also Callaway v. City of Austin*, No. A-15-CV-00103, 2015 WL 4323174 at *6 n.2 (W.D. Tex. Jul. 14, 2015) (noting that although the Fifth Circuit appears not to have addressed the issue, every circuit to do so has found that the holding in *Monell* applies to private corporations) (collecting cases). Therefore, Edison cannot claim that Avalon is liable for the torts of its employees unless "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690–91. Edison does not point to a single policy, regulation, or decision officially adopted that would support a constitutional violation. Nor does Edison provide evidence of a custom or practice adopted by the Avalon companies that caused a violation of his constitutional rights. *Id.* at 691. Therefore, the constitutional claims against the Avalon companies must be dismissed.

Finally, Edison does not raise a fact issue on his state law claim against the Avalon companies for negligent hiring or supervision. In order to prevail on a claim for negligent hiring or supervision, a plaintiff must establish foreseeable tortious conduct of the employee and the defendant's negligent hiring practices. *See Wansey v. Hole*, 379 S.W.3d 246, 247–48 (Tex. 2012) (citing and quoting *Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 384 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("To prevail on a claim for negligent hiring or supervision, the plaintiff is required to establish not only that the employer was negligent in hiring or supervising the employee, but also that the employee committed an actionable tort against the plaintiff.")). In other words, a plaintiff must show "that the risk that caused the entrustment or hiring to be negligent also proximately caused plaintiff's injuries." *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 240 (Tex. 2010) (citing *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796 (Tex. 2006)). "To sustain such a claim based on a failure to screen, a plaintiff must

show that anything found in a background check 'would cause a reasonable employer not to hire' the employee, or would be sufficient to put the employer 'on notice that hiring [the employee] would create a risk of harm to the public." *Id.* (quoting *Fifth Club*, 196 S.W.3d at 796-97).

Edison fails to point to evidence to raise a fact issue that there was anything in any of Avalon's employees' backgrounds that should have placed the Avalon companies on notice, had they conducted proper screening of the defendant-employees, that the employee(s) were unfit for their jobs such that hiring any of them would cause foreseeable harm to a resident like Edison. *See TXI Transp.*, 306 S.W.3d at 240. Accordingly, the Avalon Defendants are entitled to summary judgment on all of Edison's claims against them, and those claims will be dismissed.

### 3. Unserved Avalon Defendants

Edison also named James Higby, Jane Doe Mota, Greg Basham, and Jane Does 3-10 as defendants purportedly employed by Avalon, but Avalon indicated in their Answer that it lacked knowledge of these individuals.[51] These individuals have not been served, are not represented by counsel, and have not appeared in this case. The Fifth Circuit has held parties not joining in a successful motion for summary judgment are nonetheless entitled to benefit from that motion if the same reasons for dismissal would apply to them. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001). Edison does not allege any specific facts against any of these defendants, and, for the same reasons that the claims against Bovee and Johnson are subject to dismissal, the claims against these unserved defendants are also subject to dismissal.[52]

---

[51] *See* Doc. No. 18 at ¶¶ 13, 16-19.
[52] Alternatively, Edison fails to allege any facts to show the personal involvement of Higby, Basham, or Mota in any constitutional violation, and, therefore, fails to state a claim for which relief may be granted against them under section 1983. Accordingly, claims against Higby, Basham, and Mota are subject to dismissal pursuant to 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915A(b)(1).

## B.    Claims against the TDCJ-PD Defendants

At the conclusion of his Second Amended Complaint, Edison generally alleges that the defendants violated his First, Fourth, Fifth, Sixth, Ninth, and Fourteenth Amendment rights.[53] Although Edison does not specify which aspects of those Amendments were violated or tie his allegations to any specific Amendment, Edison's claims center on his allegations of conspiracy to retaliate against him for filing the 2008 lawsuit against non-defendant Kohn.

Claims for retaliation have four elements: (1) the exercise of a constitutional right; (2) the defendant's intent to retaliate against the plaintiff for exercising that right; (3) an adverse retaliatory act; and (4) causation.  *McDonald v. Steward,* 132 F.3d 225, 231 (5th Cir. 1998). "Causation requires a showing that but for the retaliatory motive the complained of incident . . . would not have occurred." *Id.* (internal quotation marks and citations omitted).   Conclusory allegations, or a plaintiff's personal belief that he is the victim of retaliation, is insufficient to state a claim for retaliation. *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997).  The Fifth Circuit has held that, to be a retaliatory adverse action, it must be more than *de minimis. See Morris v. Powell,* 449 F.3d 682, 685-86 (5th Cir. 2006) (holding that a transfer to a less desirable job assignment is *de minimis* but that a transfer to a more dangerous prison unit was not *de minimis*).  Further, a plaintiff "must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995) (internal quotations omitted).

### 1.  Moss and Delaney

Edison alleges that in around July 2013, Moss and Delaney called him for a case conference and questioned him about why he was filing for disability and why he was not looking for work.   He alleges that Moss and Delaney stated that they did not believe his

---

disability claim and that he had to start looking for work or his parole could be revoked. He also alleges that Moss asked him about the Kohn case in Delaney's presence and told Edison that she would make his life difficult at ATC. He claims that they would not let him make his medical and legal appointments. He complains that his case conferences were frequently scheduled on the days of his medical and legal appointments.

Edison also alleges that in September 2013, Moss called him to another case conference and wanted him to drop his disability claim because she falsely claimed that his doctor had said Edison was not disabled. She told Edison that he needed to stop faking his disability and look for work. She also allegedly told Edison that he would have to show her his legal documents in order to be allowed to go to the law library.

Regarding the claims against Delaney, although Edison alleges that Delaney was informed of the Kohn lawsuit in July 2013, Edison alleges no facts to show that Delaney acted in any way adverse to him; there is no evidence of Delaney's personal involvement in any action towards Edison other than to be in the room when Edison met with Moss on one occasion in July 2013 and to tell Edison that he needed to start looking for work. This is insufficient to show Delaney's personal involvement in any constitutional violation, and the claims against him must be dismissed. *See Murphy*, 950 F.2d at 292.

Regarding Moss's threats, Edison does not allege that he actually dropped his disability suit as a result of his conversation with Moss or that he ever complied with her instructions to start looking for work. Edison also does not point to any evidence that Moss or Delaney ever filed a violation of his parole based on his failure drop his disability suit. Verbal threats do not rise to the level of a constitutional violation under 42 U.S.C. § 1983. *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *Siglar v.Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *Robertson*

*v. Plano City of Texas*, 70 F.3d 21, 24 (5th Cir. 1995) (citing *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983)); *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993). In the retaliation context, courts have declined to find actionable retaliation based on unrealized threats because the alleged retaliatory act was *de minimis*. *See, e.g., Lamb v. Crites*, No. CA C-11-027, 2012 WL 130371, at *11 (S.D. Tex. Jan. 14, 2012) (unpublished) (holding that unrealized verbal threats of disciplinary action were *de minimis* and did not support a retaliation claim); *Arita v. Stagg*, No. 09–0158, 2010 WL 370343, at *6 (M.D. La. Jan. 29, 2010) (unpublished) (holding that the alleged retaliatory conduct consisting of threats and verbal abuse was *de minimis*); *Cobb v. Simmons*, No. 2:09–CV–0034, 2009 WL 2016072, at *10–11 (N.D. Tex. Jul. 9, 2009) (unpublished) (holding that threats implying that a major disciplinary action will be brought was *de minimis* for purposes of retaliation analysis).

Further, Edison does not allege that, as a result of having to reschedule his appointments, he suffered any actual harm or adverse action. Edison also does not point to any evidence to raise a fact issue that he had to show his legal materials to Moss (or Martinez[54]), or that doing so resulted in any harm to him or to any nonfrivolous case pending in court at the time. *See Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (holding that the right to access the courts "encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement"). Therefore, Edison does not raise a fact issue regarding his legal materials or legal appointments.

Edison also fails to raise a fact issue that either Moss or Delaney retaliated against him for filing the Kohn lawsuit because he does not show that they caused him to suffer an adverse retaliatory action based on retaliatory animus. His conclusory allegations and personal belief

---

[54] Although Edison alleges in his SAC that Moss and Martinez asked to see his legal materials or he would not be allowed in the library, Edison's Declaration is completely silent on this issue. Thus, there is no evidence to support this claim.

that Moss and Delaney were retaliating against him for a 2008 lawsuit are insufficient to establish retaliation claim. *Johnson*, 110 F.3d at 310. Further, Edison does not point to direct evidence of retaliation, and his claim about the four-years-old lawsuit against a former parole officer not related to this case fails allege a "chronology of events from which retaliation may plausibly be inferred." *Woods*, 60 F.3d at 1166; *see, e.g., Goudeau v. City of Tomball, Tex.,* 68 F.3d 468, 1995 WL 581820, at *2 n. 10 (5th Cir. Sept.5, 1995) (unpublished op.) (holding that ten months between protected activity and discharge too remote to be considered retaliation) (citing *Gonzales v. Galveston Indep. Sch. Dist.,* 865 F. Supp. 1241 (S.D. Tex. 1994)); *Miles v. Staude,* No. 9:10-CV-61, 2011 WL 3511456, *7–8 (E.D. Tex. 2011) (unpublished op.) (holding that five months elapsing between protected activity and change in prisoner classification was too remote of a period to justify a claim of retaliation); *Garner v. Moore,* 2012 WL 1098271, *14 (S.D. Tex. 2012) (unpublished op.) (holding that a two year gap between protected activity and retaliatory event was too remote to justify claim of retaliation) (collecting cases); *Perez v. Spence,* No. CV B: 12-230, 2015 WL 9948812, at *9 (S.D. Tex. Feb. 27, 2015), *report and recommendation adopted,* No. B-12-230, 2015 WL 9948791 (S.D. Tex. Apr. 1, 2015) (holding that a twelve-year gap was too remote in time to infer causation); *see also Ray v. Tandem Computers, Inc.,* 63 F.3d 429, 436 (5th Cir. 1995) (holding that four years was too remote to permit an inference of causation for retaliation in the context of employment action).

Moreover, Edison does not present evidence to overcome either Moss' or Delaney's entitlement to qualified immunity. A parole officer's job is "to assess the risks and needs, investigation, case management, and supervision" of parolees like Edison and to ensure that the parolee is abiding by all of the conditions of his parole, among other duties. *See* Tex. Gov't Code § 508.001(7). Part of the supervision includes calling case conferences (whether or not

they conflict with other things in a parolee's schedule) to assess a parolee's risks and needs and whether they are abiding by the terms of their parole. Edison does not dispute that he did not make any payments or ever attempt to look for work. It is not objectively unreasonable for parole officers to question a parolee about his disability claim and to require some documentation as part of their investigatory role, especially where Edison was seeking an exemption from the requirement that he look for work. Nor is it unreasonable to inform a parolee that he could lose his parole if he fails to comply with the conditions of parole, as this is also part of the duties of a parole officer. *See id.* Because he does not show that their actions were objectively unreasonable under the circumstances, Edison does not meet his burden to overcome qualified immunity for Moss and Delaney. Therefore, they are entitled to summary judgment.

### 2. **Martinez and Phillips**

Edison alleges that Martinez called him into a second case conference on September 13, 2013 and threatened him with parole revocation if he did not take a class that cost $400. Edison states that the threats continued for about two months until his disability lawyer wrote to Martinez, and then Martinez revealed that there was a free class for indigent parolees that he could take. Edison also alleges that in January 2014, Martinez and Phillips informed him that he would be transferred to Dallas and that if he did not go he would be arrested. Edison also discloses that he was transferred back to ATC within a day or two of the transfer to Dallas.

Regarding the $400 class, Edison does not present evidence to show that he ever had to pay $400 for the class or that he was prevented from taking a class because of the money. Again, unrealized verbal threats are *de minimis* acts that do not support an actionable claim for

retaliation. *See Lamb*, 2012 WL 130371, at *11; *Arita,* 2010 WL 370343, at *6; *Cobb*, 2009 WL 2016072, at *10–11 .

Regarding the transfer to Dallas, Edison does not state what role Martinez or Phillips played, if any, in his transfer to Dallas other than merely informing him of the transfer and telling him he had to go or face arrest and a possible parole revocation. It is undisputed that the transfer to Dallas was brief, lasting at most two days before Edison was transferred back to ATC.

Viewing the evidence in the light most favorable to Edison, Edison does not raise a fact issue that Martinez or Phillips harbored retaliatory intent or caused Edison to suffer an adverse retaliatory action. Although Edison alleges that unspecified defendants taunted him about "filing another suit," there is no evidence that Martinez or Phillips had any knowledge of Kohn or the 2008 lawsuit, and Edison's personal belief that he was being retaliated against because of that suit is not sufficient to show that Martinez or Phillips had any retaliatory animus against him. *See Johnson*, 110 F.3d at 310. Further, as discussed, mere threats about the $400 class do not amount to an adverse action, especially where Edison was never required to pay $400 and the class was made available to him for free.

Regarding the transfer to the Dallas halfway house, it is appropriate for the Court to consider the frequency of occurrence and the length of duration of the action to determine whether it is *de minimis*. *See Irby v. Cain*, Civ. A. No. 13-0327-SDD-RLB, 2014 WL 1028675, at *6 (M.D. La. Mar. 17, 2014) (unpublished op.) (citing *Gonzales v. Currie*, 2014 WL 222353, at *5 (S.D. Tex. Jan, 21, 2014)). An act is more than *de minimis* "only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris,* 449 F.3d at 686. It is undisputed that the transfer to Dallas was brief, lasting no more

than two days, and Edison was promptly transferred back to ATC. Thus, it appears that the transfer is *de minimis* and does not support a claim for retaliation as an adverse act.

Even if the two-day transfer to Dallas could be characterized as more than *de minimis*, Edison presents no direct evidence of causation and does not allege a chronology of events from which causation can be inferred to establish retaliation, because he presents no evidence that either Martinez or Phillips had any knowledge of the Kohn lawsuit. Without any evidence of Martinez's or Phillips' knowledge of the lawsuit, Edison has failed to establish that, but for his 2008 lawsuit against Kohn, he would not have been subjected to a retaliatory adverse act. *See McDonald*, 132 F.3d at 231. Thus, Edison does not raise a fact issue that Martinez or Phillips retaliated against him for filing the Kohn lawsuit.

In addition, Edison does not overcome Martinez's and Phillips' assertions of qualified immunity. In addition to failing to show a constitutional violation, he does not establish that Martinez or Phillips acted unreasonably given the circumstances. As noted, a parole officer's job is to supervise and monitor parolees and to ensure that they comply with the conditions of parole. One of those express conditions is that Edison must take certain classes. It is reasonable— indeed, it is Martinez's job—to call a parolee to a case conference and inquire about why a parolee has not met a condition of parole and to require some sort of documentation of disability if the parolee seeks some accommodation. As Edison himself recounts, once his lawyer wrote a letter, Martinez told him about a free class for indigent parolees that he could take. Similarly, regarding the transfer to Dallas, as soon as it was clear that Edison could not pay to be in Dallas, the Dallas officials sent him back to ATC, and he was allowed back at ATC upon arrival in Austin. Edison does not show that Martinez and Phillips acted objectively unreasonably given

the totality of the circumstances here. Accordingly, Martinez and Phillips are entitled to qualified immunity and the claims against them must be dismissed.

### 3. Lara

Edison alleges that on or around March 14, 2014, Lara convinced Percy Anderson to file a police report, which resulted in his arrest and incarceration until his parole revocation hearing, and that she also recommended the imposition of special condition Z to bar Edison from entering Travis County. He also alleges that Lara frequently came up with reasons to keep Edison from making his appointments with his doctors and lawyer, all in retaliation for Edison's previous lawsuit against Kohn.

Edison does not point to evidence to raise a fact issue regarding retaliatory intent or causation for his retaliation claim against Lara. In his pleadings, he indicates only that Delaney was present when Moss asked Edison about the Kohn lawsuit and does not point to evidence to show that Lara was aware of the lawsuit or that she would have any retaliatory animus towards Edison because he had sued Kohn. In his sworn declaration, Edison does not recount any incidents where Lara indicated any knowledge about the settled lawsuit or that it influenced her conduct towards him in any way. Accordingly, Edison fails to raise a fact issue that Lara harbored retaliatory animus against him or that, but for his 2008 lawsuit against an unrelated former parole officer, she would not have recommended that Anderson file charges or that special condition Z be imposed. *See McDonald*, 132 F.3d at 231. Accordingly, Edison fails to show a constitutional violation based on retaliation.

To the extent that Edison seeks relief against Lara for her actions regarding his March 2014 arrest and detention, Lara submits competent summary judgment evidence of Anderson's affidavit, wherein he testified that Edison assaulted him by poking him in the nose and striking

him in the face with his fist.[55] Edison does not raise a fact issue that his arrest was without probable cause, and, therefore, cannot state a claim against Lara for false arrest or false imprisonment, to the extent that he asserts those claims.[56] *See Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010) (noting that the lack of probable cause is a necessary component of those claims). Accordingly, Lara is entitled to summary judgment on the claims regarding Edison's March 2014 arrest and detention.

Regarding the imposition of special condition Z, Texas law provides that the Parole Board members "shall determine: (1) which inmates are to be released on parole or mandatory supervision; (2) conditions of parole or mandatory supervision, including special conditions." Tex. Gov't Code § 508.0441(a)(1), (2). Further, the Parole Board may, at any time, "modify the conditions of parole . . . to require the [parolee] to reside in a county other than the county required by the original conditions." *Id.* § 508.181(c). Texas law provides that the Parole Board should consider factors like protection of the victims or the parolee and the increase in likelihood of a parolee's successful completion of parole if he is required to live in another county. *Id.*; *see also id.* § 508.181(b).

Edison does not allege facts or point to evidence to raise a fact issue that he was deprived of due process when special condition Z was imposed or that he had a post-conviction liberty interest in being free from such a condition. *See Sandin v. Conner*, 515 U.S. 472, 487 (1995) (holding that due process is only implicated when a plaintiff faces a sanction that will infringe upon a constitutionally protected liberty interest). He had previously been convicted of a crime of violence against family members in Travis County, and he raises no fact issue that the special condition would impose any additional stigma upon him. *See, e.g., Jennings v. Owens*, 602 F.3d

---

[55] Doc. No. 42-1 (Anderson Formal Complaint Affidavit).
[56] Edison does not mention "false imprisonment" or "false arrest" anywhere in his SAC.

652, 659 (5th Cir. 2010) (holding that the parolee did not have a liberty interest in the imposition of a special condition where, as here, the special condition accurately reflected his status, which he previously had a full and fair opportunity to contest at the trial stage). Accordingly, Edison does not raise a fact issue that any of his due process rights were violated.[57]

Moreover, Edison does not meet his burden to overcome Lara's assertion of qualified immunity. As discussed above, Edison does not raise a fact issue that Lara violated his clearly established constitutional rights by retaliating against him because there is no indication that Lara knew about the Kohn lawsuit. Further, Edison does not show that Lara's actions were objectively unreasonable under the circumstances. The summary judgment evidence indicates that Edison engaged in an altercation with another resident in Travis County. Edison does not deny the altercation but characterizes it as a "silly argument" that, in his view, should have been ignored by the police. Lara's conduct of recommending to Anderson that he file a police report is not objectively unreasonable because she was Edison's parole officer charged with monitoring him and ensuring that he complied with the conditions of his parole.

In addition, Lara's recommendation of special condition Z was supported by reasons that are based in the record, which indicates that Edison's victims were in Travis County and that he has exhibited aggressive behavior in the ATC such that it would benefit Edison to be away from Travis County and his victims in order to have success with his parole. Accordingly, Lara's recommendation that Edison be prohibited from residing in Travis County for the pendency of his parole was not objectively unreasonable given the circumstances.

Further, Edison points to no clearly established law, and the Court has found no cases

---

[57] Because the Court determines that Edison does not meet his burden on summary judgment to show that he has a protected liberty interest in being free from special condition Z, the Court need not address whether this challenge should be brought in a habeas action in the first instance pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994).

from the United States Supreme Court or the Fifth Circuit, indicating that a parole officer could be personally liable for constitutional violations for recommending the imposition of a special condition such as special condition Z, where the Parole Board independently voted to impose such a condition. *See White*, 137 S. Ct. at 552 (holding that "the clearly established law must be 'particularized' to the facts of the case"). Because Edison does not show that Lara violated clearly established law or that she acted in an objectively unreasonable manner to recommend special condition Z be imposed, he does not overcome her assertion of qualified immunity.

C.    **Conspiracy Claims under 42 U.S.C. § 1983**

Edison alleges that all of the defendants conspired together to retaliate against him for filing the Kohn lawsuit. "The elements of civil conspiracy are (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1990). A plaintiff claiming conspiracy under section 1983 must prove an actual deprivation of a constitutional right. *Salvin v. Curry*, 574 F.2d 1256, 1261 (5th Cir. 1978); *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984); *see also Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990). The Fifth Circuit has observed that "'mere conclusory allegations of conspiracy cannot, absent reference to material facts, state a substantial claim of federal conspiracy.'" *Powell v. Martinez*, 579 F. App'x 250, 252 (5th Cir. 2014) (unpublished op.) (quoting *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222 (5th Cir. 1989)).

As discussed above, Edison does not raise a fact issue on an underlying violation of a constitutional right and offers only conclusory assertions of a conspiracy. His bare assertions, without facts or evidence to show an agreement and an underlying constitutional violation, are insufficient to defeat summary judgment regarding a conspiracy claim. Accordingly, those

claims are also subject to dismissal.

IV. **CONCLUSION AND ORDER**

Based on the foregoing, the Court **ORDERS** as follows:

1.  The motions for summary judgment and for judgment on the pleadings filed by Defendants Avalon Correctional Services, Inc., Avalon Treatment Services, LLC, ACS Corrections of Texas, LLC, and Avalon employees Tammy Bovee and Joanne Johnson [Doc. Nos. 36, 43]; are **GRANTED**, and the claims against them are **DISMISSED** with prejudice.

3.  The second amended motion for summary judgment filed by Ryan Delaney, Brittany Lara, Judy Moss, Jaime Martinez, and Jane Doe Phillips [Doc. No. 54] is **GRANTED**, and the claims against them are **DISMISSED** with prejudice.

4.  The claims against James Higby, Greg Basham, Jane Doe Mota, and the remaining Jane Does are **DISMISSED** for the same reasons that the Avalon Defendants are entitled to summary judgment.

5.  The case is **DISMISSED**. A separate final judgment shall issue.

The Clerk shall provide a copy of this Memorandum and Order to all parties of record.

SIGNED at Houston, Texas, this _____25ᵗʰ_____ day of August, 2018.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE